# DECLARATION

I, Kevin Cornell, Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), Greensboro, North Carolina, hereby state, pursuant to 28 U.S.C. § 1746, under penalty and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a federal law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code.

2. I have been a Task Force Officer with the DEA since May 2005, and I am currently assigned to the DEA, Atlanta Field Division, Greensboro Resident Office. I have been a sworn Deputy Sheriff with the Guilford County Sheriff's Office (GCSO) since July 1998. I have been a Detective with the Special Operations Division - Vice/Narcotics Unit (Vice Unit) since April 2004. In May 2012, I was promoted to the rank of Detective Sergeant supervising the Special Operations Division - Special Enforcement Team/Criminal Interdiction Unit.

3. This declaration is submitted in support of a Verified Complaint of Forfeiture for $47,193.00 in U.S. Currency seized on November 14, 2022, from the possession of Christopher Wayne JOHNSON.

4. The facts and circumstances set forth in this Declaration are based upon information provided by other law enforcement officers, and my own personal knowledge and experience. Because this declaration is being submitted for the limited purpose of

**GOVERNMENT EXHIBIT A**

establishing probable cause, I am not including all the facts and information that I have learned about or obtained during the course of this investigation.

5. Based upon the facts set forth below, there is probable cause to believe that the $47,193.00 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 and 18 U.S.C. § 981.

6. On November 14, 2022, Officers Z. Strickland and O. De La Rosa of the Guilford County Sheriff's Office (GCSO) responded to the Food Lion grocery store located at 4620 Woody Mill Road, Greensboro, North Carolina, to investigate a vehicle crash of a pickup truck into a dumpster located behind the Food Lion. An individual later identified as Christopher Wayne JOHNSON was reportedly acting erratically, both verbally and physically.

7. Upon arrival, Officer Strickland observed JOHNSON immediately walk toward them in a direct and aggressive manner, waving his hands and acting erratically, both verbally and physically. JOHNSON approached the officers wearing only sweatpants and a single sock, without shirt or shoes. JOHNSON was covered in sweat despite the temperature outside being approximately 40 degrees. JOHNSON asked the Officers if they could get in touch with the Department of Corrections. The Officers asked JOHNSON if he was ok, and if he had taken anything. JOHNSON said that he had, and that he was "crazy as fuck." JOHNSON then requested to be taken to jail. JOHNSON was detained. While Officer Strickland was placing JOHNSON in his patrol vehicle, JOHNSON asked the officers to get his .45 and put it to his head and pull the trigger. Officer Strickland requested permission to search JOHNSON, and JOHNSON consented. In JOHNSON's

pocket, Officer Strickland found a roll of $20.00 bills amounting to approximately $1,000, crumpled bills of $5s and $10s, two prepackaged marijuana blunts, a prepackaged baggie of marijuana (approximately 12 grams) in a commercially labeled package, and a small leather handgun holster.

8. Officer Strickland spoke with the Food Lion store manager, who stated he had gone outside to the parking lot to investigate customer complaints of a man (JOHNSON) who was yelling at customers and had crashed his truck into the dumpster. The store manager observed JOHNSON slamming a safe on the ground in what he believed to be an attempt to open the safe. When he asked JOHNSON if he was okay, JOHNSON struck the store manager in the face, breaking his glasses and causing a small cut on the bridge of his nose. The store manager declined to press charges against JOHNSON.

9. Based on the odor of marijuana emanating from JOHNSON's vehicle, officers conducted a probable cause search. In plain view, through the driver's side window, Officer Strickland observed an empty package of a prepackaged blunt. This package had the same branding as the packages found on JOHNSON. Officer Strickland could smell the odor of marijuana coming from the vehicle. Officer Strickland continued to search the truck and found an empty bag labeled as marijuana edible cookies and other empty commercially packaged marijuana bags. U.S. Currency in denominations of 20s, 10s, 5s, and 1s were strewn around the inside of the truck. In the center console, a $20 bill rolled in a manner commonly used to snort narcotics and a .45 ACP hollow point round were found. Three mobile phones were found inside the truck. A small black safe was located in the bed of the truck. Also in the bed of the truck were two large, unopened

3

Google TVs. JOHNSON stated he purchased the TVs from a family member in the parking lot of a Wal-Mart.

10. Officer Strickland attempted to locate a firearm inside the truck based on JOHNSON stating he had a firearm in the truck. Unable to locate the firearm, Officer Strickland asked JOHNSON where it was. JOHNSON stated the firearm was inside the safe. JOHNSON gave consent to search the safe.

11. JOHNSON stated to Officer Strickland that the safe and its contents belonged to him. JOHNSON stated he had a key at his home to open the safe.

12. The Alamance Fire Department was called to the scene to open the safe. Once the safe was opened, Officer Strickland observed loose bills of U.S. Currency and no less than twenty (20) rubber-banded bundles of U.S. Currency. No firearm was found in the safe.

13. GCSO Vice/Narcotics Detective J. Jasso responded to the scene to assist with the investigation and conduct an interview with JOHNSON. Det. Jasso smelled the faint odor of cocaine coming from the truck, the U.S. Currency, and the safe. Det. Jasso also observed a white powdery substance that appeared to be cocaine on some of the bundles of U.S. Currency and inside the safe.

14. In an interview with Det. Jasso, JOHNSON stated that he was heading from his residence in Mt. Airy, North Carolina to meet an unknown person at the Hampton Inn hotel in Sanford, North Carolina. JOHNSON did not provide a reason for the meeting. JOHNSON said the truck belonged to him, and he admitted to having a small amount of marijuana on him. JOHNSON admitted the U.S. Currency located in the safe belonged

exclusively to him and that it totaled approximately $50,000. JOHNSON stated that the U.S. Currency was his savings from a legitimate job at Tyson Chicken, where he began working following his release from prison in 2021. JOHNSON stated that he rubber-banded the money himself. JOHNSON stated he gets paid between $1,600 - $1,700 weekly. JOHNSON was unable to provide his supervisor's name or a telephone number. JOHNSON was also unable to provide an explanation of why he was carrying his employment savings with him in the truck.

15. When confronted about the marijuana and drug paraphernalia that had been located on his person and in the truck, JOHNSON admitted that he did "sell marijuana from time to time". JOHNSON further stated he would buy marijuana in California for $700-$800 per pound and resell it in North Carolina for $1,400-$2,000 per pound, and that he would try to procure at least one hundred (100) pounds at a time. JOHNSON admitted that some of the money located in the black safe represented profits from marijuana sales. JOHNSON was asked about why cocaine residue was found to be located in the safe and on some of the money bundles, and JOHNSON eventually admitted to selling cocaine and that profits from cocaine sales were in the safe. JOHNSON preferred not to answer specific questions regarding quantities sold or how much profit he was making from cocaine sales.

16. Prior to collection of the Currency from the truck and the safe, Master Corporal Deputy G. Apple responded to the scene and deployed his canine Enzo to conduct a scan of the Currency. Deputy Apple advised his canine positively alerted to the odor of narcotics.

17. Deputy Apple has been a sworn K9 Officer for the past eleven (11) years and is currently employed as a Deputy Sheriff by the GCSO in Greensboro, North Carolina and is currently assigned as K9 Handler with the K9 Unit within the Special Operations Division. Deputy Apple has received approximately fourteen hundred (1,400) hours of instruction and training in narcotics detection, aggression, tracking, building searches, area searches, article searches and obedience. Deputy Apple completed a five-hundred forty (540) hour basic handler canine training from November 2014 through December 2014. Since completing his initial canine handler training, Deputy Apple has been assigned to patrol as a canine handler, assisting in several canine related calls for service and investigations.

18. In October 2014, Deputy Apple was selected by the GCSO to be the canine handler for Canine Enzo and was assigned to the GCSO Special Operations Division. Deputy Apple and Canine Enzo are a certified team through the North America Police Work Dog Association, certifying for the first time together in September 2015. Deputy Apple and Canine Enzo are credited with locating over one thousand one hundred (1,100) pounds of illegal narcotics and over $400,000.00 in bulk United States Currency while conducting criminal investigations and assisting with various local narcotics investigations.

19. Canine Enzo is a 9.5-year-old male Belgian Malinois, a breed specifically selected for their keen senses and ability to be trained for law enforcement work. Canine Enzo initially underwent an initial training period at the GCSO canine facility conducted by senior canine handlers Master Corporal E. Stanley and Corporal D. Thompson. During

this training period, Canine Enzo proved that he could reliably use his olfactory senses to locate narcotic training aids of actual controlled substances which include Heroin, Cocaine (HCl and Base), Marijuana / Hashish, and Methamphetamines. He also proved to be reliable and successful in aggression, tracking, area searches, building searches, article searches and obedience. After successful completion of this training, Canine Enzo was entered into service with the GCSO – Special Operations Division in October 2014.

20. Canine Enzo was then assigned to Deputy Apple in December 2014. Deputy Apple and Canine Enzo are certified as a Canine Team by the North American Police Working Dog Association, certifying in September 2022. This certification is valid for one year from the date of issuance.

21. Canine Enzo undergoes frequent training for the detection of concealed controlled substances, which is ongoing in order to ensure his proficiency. Deputy Apple attends weekly training with the GCSO canine unit, which exposes him to basic and advanced narcotic concealment methods, narcotics detection issues, training, and animal behavior.

22. Deputy Apple and Canine Enzo have assisted various local law enforcement agencies in several narcotics investigations. Deputy Apple has successfully demonstrated the ability to properly deploy and maintain a police canine and effectively locate controlled substances with the assistance of Canine Enzo that have been concealed in locations such as; sealed packages, wooden crates, residential homes and outbuildings, open areas, automobiles, commercial motor vehicles, luggage, electrical components, appliances, and elsewhere.

23. Det. Jasso and Deputy De La Rosa collected the marijuana, marijuana paraphernalia, all of the U.S. Currency, the safe, and three cell phones, all of which were transported to the Special Operations building for processing.

24. Det. Jasso utilized a NARC II cocaine wipe to field test the white powdery substance and a positive indication for the presence of cocaine salts was observed.

25. Related to this incident, JOHNSON was not charged related to the assault on the store manager, but JOHNSON was arrested and charged with felony Possession with Intent to Sell/Deliver Marijuana based on the discovery of suspected marijuana in multiple bags. The charges associated with the seizure are currently pending.

26. On December 07, 2022, I transported the U.S. Currency to the Wells Fargo – local Greensboro Branch located in Greensboro, North Carolina, where it was counted and found to total $47,193.00, which includes $44,910 found in the safe, $1,283 found on JOHNSON's person and loose in the truck, and $1,000 found in a hoodie located in the truck. The U.S. Currency was converted to an Official Cashier's check made payable to the U.S. Marshal Service which was sent to the U.S. Marshal's Service in Raleigh, NC (via FedEx) for submission to the U.S. Marshal Seized Assets Deposit Fund.

27. JOHNSON has an extensive previous criminal history related to narcotics sales and has numerous convictions related to the sale of cocaine. JOHNSON'S criminal drug charges leading to a conviction include:

| Offense Date | Offense | Conviction Date |
|---|---|---|
| 4/9/96 | PWISD Cocaine | 7/29/96 |
| 3/24/00 | PWISD Cocaine, Maintain Vehicle/Dwelling/Place CS | 10/26/00 |
| 8/23/00 | PWISD Cocaine, Maintain Vehicle/Dwelling/Place CS | 11/13/00 |
| 11/1/01 | Sell Cocaine | 3/17/03 |
| 11/5/01 | Sell Cocaine | 3/17/03 |
| 9/5/06 | Sell/Deliver Cocaine | 3/17/03 |
| 12/8/07 | PWISD Cocaine | 2/9/09 |
| 12/8/07 | Possess Marijuana up to ½ oz, Possess Paraphernalia | 7/9/08 |
| 11/25/08 | Sell/Deliver Schedule II CS | 2/9/09 |

JOHNSON was in prison from February 5, 2009 to August 16, 2021.

28.   DEA adopted the seizure of the $47,193.00 in U.S. Currency, and began administrative forfeiture proceedings. Notice of the forfeiture proceeding was published on an official government internet site ([www.forfeiture.gov](www.forfeiture.gov)) from January 9, 2023 to February 7, 2023.

29.   On January 3, 2023, DEA received an administrative claim to the $47,193.00 in U.S. Currency from JOHNSON. On March 8, 2023, a revised claim was received from JOHNSON. In his revised claim, JOHNSON contends the seizure of $47,193.00 was unconstitutional because the alleged contraband was not a controlled substance. JOHNSON also contends the $47,193.00 in U.S. Currency is from a check he received from his Inmate Trust Account provided by the North Carolina Department of Public Safety. JOHNSON claims he received the check on or about August 13, 2021.

30. Upon receipt of the claim, the administrative forfeiture process on the $47,193.00 in U.S. Currency was terminated, and the seizure was referred to the United States Attorney's Office for judicial forfeiture.

## CONCLUSION

31. Based on the investigation, facts, and circumstances, related above, there is probable cause to believe that the $47,193.00 in U.S. Currency was furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, or represents proceeds traceable to such an exchange, and is therefore subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

This the 2 day of June, 2023.

_____
Kevin Cornell
Task Force Officer
Drug Enforcement Administration

10

Case 1:23-cv-00455   Document 1-1   Filed 06/06/23   Page 10 of 10